UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| TOINETTE YVONNE NEAL,<br>    Plaintiff,<br><br>v.<br><br>ANDREW SAUL, Commissioner of<br>Social Security,<br>    Defendant. | )<br>)<br>)<br>)   CAUSE NO.: 2:20-CV-7-JEM<br>)<br>)<br>)<br>) |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Toinette Yvonne Neal on January 8, 2020, and Plaintiff's Opening Brief in Support of a Social Security Appeal [DE 14], filed by Plaintiff on June 12, 2020. Plaintiff requests that the decision of the Administrative Law Judge denying her supplemental security income and disability insurance benefits be vacated and remanded for further proceedings. On September 17, 2020, the Commissioner filed a response, and on October 10, 2020, Plaintiff filed a reply.

**I.    Procedural Background**

On November 3, 2016, Plaintiff filed concurrent applications for supplemental security income and disability insurance benefits alleging that she became disabled on September 30, 2016, due to back surgery, diabetes, HIV, depression, blood pressure, cane use for support, and neuropathy. Plaintiff's applications were denied initially on March 14, 2017, and again upon reconsideration on July 6, 2017.

On November 19, 2018, Administrative Law Judge ("ALJ") Marc Jones held a video hearing at which Plaintiff and a vocational expert ("VE") testified. On January 23, 2019, the ALJ

1

issued a decision finding Plaintiff not disabled and denying both her SSI and DIB. The ALJ made the following findings under the five-step analysis:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.

2. The claimant has not engaged in substantial gainful activity since September 30, 2016, the alleged onset date.

3. The claimant has the following severe impairments: depression; diabetes; left foot fifth digit amputation; trans metatarsal foot amputation for gangrene of the left foot; diabetes type II; foot ulcers; neuropathy and spine disorder status post lumbar surgeries and fixture implantation.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404 Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can occasionally climb ramps and stairs; occasionally balance, stoop, kneel, crouch and crawl; never climb ladders, ropes, or scaffolds and never work at unprotected heights. Every 30 minutes she be allowed to shift positions or alternate between sitting and standing for one to two minutes at a time while remaining on task and she must use a medically necessary cane at all times while walking. She is limited to simple work-related decision and simple, routine tasks with no assembly line work or strictly enforced daily production quotas and few changes in a routine work setting. She can never interact with the general public; she can work in proximity to other co-workers, but only with brief, incidental interaction with other co-workers and no tandem job tasks requiring cooperation with other co-workers to complete the task and she can occasionally interact with her supervisors throughout the workday.

6. The claimant is unable to perform any past relevant work.

7. The claimant was a younger individual age 18-44 on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communication in English.

2

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 20, 2016, through the date of this decision.

On January 25, 2019, Plaintiff filed a request for review, which the Appeals Council denied on November 5, 2019, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II.     Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734–35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his or her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review.*" Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions.");

4

*Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

**III. Analysis**

Plaintiff argues that the ALJ erred in finding that Plaintiff did not meet or medically equal Listing 1.04, failed to adequately explain his findings regarding Listing 1.04, and should have acquired additional evidence before determining the RFC. The Commissioner argues that the ALJ's findings at Step Three were supported by substantial evidence and that the ALJ did not err in concluding that the record was sufficient to issue a decision.

The determination of whether a claimant suffers from a listed impairment comes at steps two and three of the ALJ's analysis. Step two requires an examination of whether the claimant has an impairment or combination of impairments that are severe. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). At step three, the ALJ must determine whether the claimant's impairments meet an impairment listed in the appendix to the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). An individual suffering from an impairment that meets the description of a listing or its equivalent is conclusively presumed to be disabled. *See Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). In order "[f]or a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). An impairment that manifests only some of the criteria will not qualify, no matter its severity. *Id*. Accordingly, Plaintiff must have demonstrated that she met every aspect of the following criteria to satisfy Listing 1.04:

> ***1.04 Disorders of the spine*** (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise

5

> of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg
> raising test (sitting and supine) [ . . . .]

20 C.F.R. Pt. 404, Subpt. P, Appx. 1, § 1.04.

Plaintiff argues that she meets the requirements of Listing 1.04A and that the ALJ ignored evidence. The ALJ stated:

> [A]lthough the claimant sometimes had positive straight leg raising and limited range of motion, there were also times when she did not. Further, her sensation is typically intact and any muscle weakness in her lower extremities occurred more recently and, even so, her motor activity was documented as intact many times. No treating doctor or medical expert suggested the claimant had extreme functional limits that would be consistent with meeting or equaling listing 1.04.

Plaintiff argues that the ALJ ignored evidence in the record. She points numerous imaging results she received from 2016 to 2017, most recently revealing a nearly complete obliteration of her lumbar spine at L4-L5 intervertebral disc space, along with many other diagnoses in the L4-L5 disc space. Plaintiff contends that the ALJ admitted that evidence in the record was consistent with the requirements of Listing 1.04, but inappropriately dismissed that evidence based on its frequency. Plaintiff argues for example, that the ALJ noted positive straight leg tests but dismissed them because "there were times when she did not [have positive straight leg raising]." Plaintiff also argues that her muscle weakness was documented as early as March 15, 2016, not "recently" as described by the ALJ.

The Commissioner argues that elsewhere in his opinion, the ALJ provided detailed

6

discussion regarding the listing criteria that were not consistently present, mainly the evidence of normal motor findings, and that this reasoning should be factored into the ALJ's Step 3 analysis. In particular, the Commissioner argues the ALJ analyzes reports that demonstrate that Plaintiff did not have motor loss that was accompanied by sensory or reflex loss, a necessary criterion for Listing 1.04. However, the ALJ did not thoroughly analyze the criteria that support Listing 1.04 later in his opinion. Instead, the ALJ admitted that Plaintiff experienced positive leg raise tests, a necessary criterion for Listing 1.04, but cursorily dismissed those tests because Plaintiff also exhibited negative raise tests. However, there is not requirement in the listing that the symptoms be consistent over time and the ALJ did not provide any rationale for choosing to weigh one test result over the other. Additionally, while the ALJ also rejected the findings of muscle weakness as they occurred only "recently," he failed to analyze the evidence of muscle weakness from 2016. Finally, while the ALJ later analyzes tests that document normal motor function, he again failed to analyze tests that support Listing 1.04, such as the testing by Plaintiff's primary care physician performed in April 2016.

Given the record of Plaintiff's limitations, the ALJ's cursory analysis of the criteria supporting Listing 1.04 was inadequate. *Edmonson v. Colvin*, 14 CV 50135, 2016 WL 946973, at *4 (N.D. Ill. Mar. 14, 2016) ("It is true that the ALJ engaged in a fairly lengthy recitation of the medical evidence, but this was mostly a long chronology of doctor visits with little commentary or analysis. Even when the ALJ offered some fleeting commentary, he never connected it back to the specific 1.04(A) requirements."). Although the claimant bears the burden of proving that her condition meets the criteria of a listing, *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006), the ALJ's decision must "offer more than a perfunctory analysis of the listing." *Barnett*, 381 F.3d

at 668 (citing *Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003); *Scott*, 297 F.3d at 595–96; *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)). In this case, the ALJ failed to even analyze the very first step – whether Plaintiff had a disorder of the spine. *Patrick v. Comm'r of Soc. Sec.*, 3:17-CV-00377-MGG, 2018 WL 3617260, at *3 (N.D. Ind. July 27, 2018) (rejecting an ALJ's 1.04 Listing determination that did not contain a complete analysis of the requirements). While the Commissioner attempted to formulate an argument on behalf of the ALJ, arguing that "evidence does not show that Plaintiff had nerve root compromise with the required evidence to meet Listing 1.04," the Commissioner may not present an argument not raised by the ALJ himself. *SEC v. Chenery Corp.*, 318 U.S. 80, 87–88 (1943); *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010). Accordingly, this case is being remanded because the ALJ performed an incomplete analysis of the criteria for Listing 1.04.

Plaintiff also argues that, after the ALJ discounted opinions of the non-examining State agency consultants he should have sent Plaintiff for a consultative examination or requested that a medical examiner review Plaintiff's file before determining her RFC. Because the case is being remanded for a new analysis of Listing 1.04, the Court need not address these arguments. On remand, the ALJ is remanded that the ALJ has a duty to develop the record. *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000).

On remand, the ALJ is directed to thoroughly analyze whether Plaintiff's back impairments meet or medically equal Listing 1.04. If the ALJ determines that Plaintiff's impairments do not meet or medically equal the criteria of a Listing, the ALJ must draw a logical bridge from the evidence in the record to the conclusions about Plaintiff's RFC, including evidence that supports the ALJ's conclusions.

**IV.     Conclusion**

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Opening Brief [DE 14], and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 18th day of February, 2021.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:     All counsel of record